UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STERLING MAURICE LANE,

                         Petitioner,                  Case No. 2:19-cv-12689
                                                    Hon. Arthur J. Tarnow

v.

CONNIE HORTON,

                         Respondent.

_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF
HABEAS CORPUS, AND (2) DENYING CERTIFICATE OF
APPEALABILITY**

A Wayne Circuit Court jury convicted Sterling Maurice Lane in 2016 of four felony offenses involving the possession of a firearm and ammunition. The court sentenced him as a third-time firearm offender to flat term of ten years' imprisonment for one of the firearm offenses and time served for the other offenses.

Lane challenges his state court convictions in a petition for writ of habeas corpus filed under 28 U.S.C. § 2254. The petition raises four claims: (1) Lane's Fourth Amendment rights were violated by the warrantless search of his girlfriend's house, (2) the misconduct of the prosecutor rendered Lane's trial fundamentally unfair, (3) Lane's trial counsel was ineffective for failing to present evidence of his

*Lane v. Horton*, No. 19-12689

legitimate expectation of privacy in his girlfriend's home, and (4) insufficient evidence was presented at trial to sustain Lane's convictions.

The Court will deny the petition because these claims are without merit. The Court will also deny Lane a certification of appealability.

## I. Background

As later established at trial, on November 4, 2015, Lane was with his girlfriend Loretta Smith at her Detroit home on Murray Hill Street. Lane and Smith had been in a romantic relationship for several years, Lane had a key to her house, and had permission to come and go from the house as he pleased.

That night, Smith had the blinds on the front window of the house drawn, and the front door was closed. Lane briefly exited the house, and then he quickly returned with police officers following close behind. According to Smith, the officers did not ask for permission to enter, nor did they present a warrant.

Police officers took Lane outside, and then they searched the living room, where they found a handgun underneath a couch cushion. Smith said that the gun belonged to her. Lane, who had prior firearm convictions, was arrested and charged with several firearm offenses as well as with possession of marijuana.

Prior to trial, defense counsel moved to suppress the firearm on the grounds that police officers violated Lane's Fourth Amendment rights when they entered and searched Smith's house without a warrant or permission.

2

*Lane v. Horton*, No. 19-12689

The trial court held a suppression hearing. Detroit Police Officer William Zeolla testified that he and his partner responded to a call of shots fired near Smith's house during the night of November 4, 2015. Officer Zeolla saw Lane walking down the street and shined spotlight at him. Officer Zeolla testified that he then saw Lane grab his waistband on his right side and run after being targeted by the spotlight.

In Officer Zeolla's experience, people who grab their sides are "possibly armed with a handgun." (ECF No. 8-3, PageID.105.) So he decided to exit his car and give chase. Zeolla saw Lane run into Smith's house. Before following him inside, he saw Lane remove a blue steel revolver from his right side. (Id., PageID.106.) Looking through the living room window, the officer saw Lane lean down near a couch, where he later discovered and retrieved the handgun.

Defense counsel did not present any evidence at the hearing. Defense counsel argued that Lane lived at the house, and therefore the police required a warrant or exigent circumstances to enter the premises. The court pushed back on the contention that Lane lived at the house:

> THE COURT: Okay. But is there anything that was presented that I could say: "Well, I'm lookin' at this man's I.D., and it was admitted." All you're doing is arguing. He's indicated-I've got to look at the evidence that's been presented. He (the officer) indicated that he did not live there. There was no examination as to: "What made you-or led you to that conclusion?" So, because it wasn't challenged, it was accepted. There was nothing introduced to show that this defendant resided there and would have an expectation of privacy at that dwelling. That's why I asked you is there any more evidence that's going to be

3

presented, because I've got to go by what's on the record. But, go ahead.

MS. ROLPH: I mean I can ask Mr.-voir dire Mr. Lane, right now, and ask Mr. Lane questions as it relates to that.

THE COURT: It's too late. It's too late. We're at argument. You had an opportunity to present it, and you didn't. That's what I was waitin' on, something to show that he would at least have an expectation of privacy in that particular location.

(Id., PageID.126-27.)

The Court then denied the motion to suppress on two grounds. First, the Court found an exigency circumstances exception to the warrant requirement:

First of all, the fact that this officer was lawfully at the location where he was, on a street, there is less that the People have to show, and there is a reduced expectation of privacy; he's, i.e., on a public street. Shots fired. He grabs his side. He believes he sees what he believes is the handle of a gun, he believes. He then pursues him, the officer. The defendant is running. The Court believes that the warrantless exception was that he could have secreted the gun, the fact that there could have been a public safety basis for him going after getting that gun. He could have run in there with the gun. He got there for shots fired. He makes this location.

(Id., PageID.135-36.)

The Court also found that Lane lacked standing to challenge the entry into Smith's house:

And, moreover, there is no showing that this defendant had any expectation of privacy in that location. The officer said it's his girlfriend's house, after further investigation. There was nothing that was indicated, on this record, that the Court could go by, such as, you know, proof of residency by the defendant, and I or he had his clothes

*Lane v. Horton*, No. 19-12689

there, and I or he spent a considerable amount of time there at that location, or anything arising to that expectation of privacy.

(Id., PageID.136.)

At Lane's jury trial, the prosecutor presented evidence regarding the same events testified to at the suppression hearing. The parties stipulated to Lane's prior record. The jury found Lane guilty of felon in possession of a firearm, commission of a felony with a firearm third-offense, felon in possession of ammunition, and possession of marijuana. The court sentenced Lane to time served on all counts except the commission of a felony with a firearm, which carried a mandatory 10-year sentence.

Lane filed a claim of appeal in the Michigan Court of Appeals. His appellate counsel filed a brief on appeal that raised one claim:

> I. Mr. Lane's conviction must be vacated where it was predicated on evidence obtained in violation of the Fourth Amendment, and trial counsel was ineffective for failing to present evidence of Mr. Lane's standing to object to the search.

Lane also filed a pro se supplemental brief that raised the following additional claims:

> II. The trial court errored in not suppressing the firearm found in Mr. Lane's fiancée's house violating his 4th Amendment right to be free from unreasonable searches and seizures.

> III. The cumulative effect of the prosecutor's errors added up to prosecutor misconduct violating the appellant's 14th Amendment due process or fundamental fairness.

*Lane v. Horton*, No. 19-12689

IV. Mr. Lane's trial counsel was ineffective in her representation of appellant case violating his 6th Amendment rights.

V. There was insufficient evidence in this case to convict the appellant of felony firearm, felon in possession of firearm/ammunition.

The Michigan Court of Appeals affirmed Lane's convictions and sentences in an unpublished opinion. *Lane*, 2018 WL 472215. Lane then filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims. The Michigan Supreme Court denied the application by standard order. *People v. Lane*, 919 N.W.2d 47 (Mich. 2018) (Table).

## II. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

Additionally, this Court must presume the correctness of a state court's factual determinations. 28 U.S.C. § 2254(e)(1).

*Lane v. Horton*, No. 19-12689

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "[o]nly an 'objectively unreasonable' mistake, . . . one 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement,' slips through the needle's eye of § 2254." *Saulsberry v. Lee*, 937 F.3d 644, 648 (6th Cir.) (quoting *Richter*, 562 U.S. at 103), cert. denied, 140 S. Ct. 445, 205 L. Ed. 2d 256 (2019).

*Lane v. Horton*, No. 19-12689

### III. Discussion

<u>A. Fourth Amendment</u>

Lane's first and third claims are closely related. His first claim asserts that his Fourth Amendment rights were violated when the officer searched Smith's house without a warrant or exigent circumstances. Lane asserts that he had a legitimate expectation of privacy in the residence given his long-standing relationship with Smith. Lane's related third claim asserts that his counsel was ineffective for failing to present evidence at the suppression to establish his legitimate expectation of privacy in Smith's house.

As an initial matter, Lane's stand-alone Fourth Amendment claim is not cognizable. The Supreme Court held in *Stone v. Powell*, 428 U.S. 465 (1976), that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id*. at 494 (internal and end footnotes omitted). "[T]he *Powell* 'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013). The trial court held a hearing on Lane's Fourth Amendment claim, and the Michigan Court of Appeals reviewed the trial court's

determination that no violation occurred. Accordingly, Lane was afforded a full and fair opportunity in state court to present this claim, and review of it here is therefore barred by *Stone*.

That said, a habeas petitioner may properly raise a claim that his counsel was ineffective in the manner that he presented a Fourth Amendment claim to the state court. In *Kimmelman v. Morrison*, 477 U.S. 365 (1986), the Supreme Court stated that "[w]here defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Id*. at 375. For that reason, the Court will review the Michigan Court of Appeals' analysis of Petitioner's Fourth Amendment claim under the AEDPA standard in the context of whether he can demonstrate that he was prejudiced by the asserted ineffective assistance of his counsel during the presentation of the underlying claim to the state court.

The Michigan Court of Appeals, after reciting applicable Fourth Amendment law and summarizing the evidence presented at the suppression hearing, resolved Petitioner's search and seizure issue as follows:

> No evidence was presented at the suppression hearing to establish that defendant had a legitimate expectation of privacy in the house located at 15444 Murray Hill. Defendant presented no evidence or witnesses at the hearing. Zeolla, the only witness to testify at the

hearing, indicated that defendant's girlfriend lived at the house and that defendant's identification card contained a different residential address. No evidence was presented at the suppression hearing that defendant was staying at his girlfriend's house or had any expectation of privacy there. Only later, after defendant was convicted and moved for a new trial, did he produce evidence suggesting that he regularly stayed at 15444 Murray Hill and kept possessions there. A motion for the suppression of evidence must be determined on the basis of the facts produced at the time of the suppression hearing and cannot be amplified by evidence presented later. See *People v. Kaigler*, 368 Mich. 281, 288 (1962); *People v. Cutler*, 73 Mich. App. 313, 319-320 (1977). Defendant thus failed to establish at the suppression hearing that he possessed standing to challenge the search of the house at 15444 Murray Hill.

In any event, Zeolla's testimony at the suppression hearing established that exigent circumstances justified the officers' actions. First, there was no search or seizure of defendant before he entered the house. "In order for any police procedure to have constitutional search and seizure implications, a search or seizure must have taken place." *People v. Frohriep*, 247 Mich. App. 692, 699 (2001) (citations omitted). Constitutional safeguards vest only once a citizen has been seized. *Id.* The mere pursuit of a person does not constitute a seizure; rather, the application of physical force or the suspect's submission to an officer's show of authority is required in order for a seizure to have occurred. *California v. Hodari D*, 499 U.S. 621, 626 (1991); see also *People v. Lewis*, 199 Mich. App. 556, 559-560 (1993) (holding that the defendant was not seized until a police officer actually laid his hands on the defendant, and explaining that "[e]ven if we assume that the officers' pursuit of defendant amounted to a show of authority, because defendant did not submit to that show of authority, no seizure occurred until [an officer] physically took hold of him."). Here, defendant fled from the police and did not submit to any show of authority before entering the house, nor did the officers put their hands on defendant outside the house. Hence, no seizure occurred before defendant entered the house. In any event, given that (1) the officers were responding to a report of shots fired in the area, (2) defendant was the only person that the officers saw walking in the area, and (3) defendant grabbed his right waistband area and fled upon being illuminated by the police spotlight, the officers had reason to believe that defendant may have been

carrying a concealed weapon or may have been involved in the reported shooting incident.

Further, the officers' entry into the house at 15444 Murray Hill was justified by exigent circumstances. The officers were pursuing defendant, who had exhibited suspicious behavior by grabbing his right waistband area and fleeing upon being illuminated by a police spotlight in an area where there had been a recent report of shots having been fired. Defendant then pulled a handgun from his waistband area as he entered the house. The officers were thus pursuing a fleeing suspect when they entered the house. The officers had reason to believe that defendant could pose a danger to the officers or to persons inside the house given that defendant was in possession of a firearm and had fled from the police in the vicinity in which there had been a report of shots fired. Zeolla saw defendant through the picture window leaning down in the area of a couch. It was thus reasonable to infer that defendant was attempting to conceal the firearm. Overall, the entry into the house to pursue defendant was justified under the hot pursuit doctrine.

Once the officers entered the house, they were permitted to seize incriminating evidence that was in plain view. "The plain view doctrine allows police officers to seize, without a warrant, items in plain view if the officers are lawfully in a position from which they view the item, and if the item's incriminating character is immediately apparent." *People v. Champion*, 452 Mich. 92, 101 (1996) (citations omitted). As discussed, the officers had lawfully entered the house in hot pursuit of defendant. Zeolla's testimony indicated that he saw the handgun protruding from underneath a cushion on the top of the couch. The couch was to the immediate right of the entryway. Zeolla had seen defendant leaning down in this area. Zeolla indicated that it was the same handgun he had seen defendant retrieve from his right waistband area upon entering the house. Zeolla thus had reason to believe that the handgun was incriminating because it was the gun defendant appeared to have been concealing before he entered the house.

In his Standard 4 brief, defendant suggests that the plain view doctrine is inapplicable because Zeolla walked from the entryway to the living room to retrieve the handgun. Defendant relies on Zeolla's trial testimony indicating that a wall separated the entryway from the living room and that the living room cannot immediately be seen upon

entering the house. As discussed, review of this issue is based on the testimony presented at the suppression hearing and cannot be amplified by trial testimony. See *Kaigler*, 368 Mich. at 288. The exact location where Zeolla was standing before he approached the living room couch is not clear, but Zeolla's testimony at the suppression hearing indicated that the entryway area took up only a few feet and that the living room was to the immediate right of the entryway. Zeolla did not recall any door separating the living room from the entryway. Given the small area in which these events transpired, we are not convinced that the plain view doctrine is inapplicable.

But even if the firearm was not in plain view, Zeolla's entry into the living room to seize the weapon was justified by exigent circumstances. The fact that a gun used by a fleeing suspect is missing may constitute exigent circumstances justifying a warrantless search. See *People v. Esters*, 417 Mich. 34, 51 (1982) (opinion by COLEMAN, J.) (concluding that a "missing gun and missing accomplice provided exigent circumstances."); *id.* at 60 (opinion by LEVIN, J.) (agreeing with the lead opinion "that the missing gun and missing accomplice were in the instant case exigent circumstances justifying the warrantless search."). Here, Zeolla saw defendant retrieve the gun from his right waistband area before entering the house and then saw through the picture window that defendant bent down near the living room couch. No weapon was found on defendant's person when a pat-down search of defendant was conducted in the entryway. The officers thus had reason to be concerned that other persons in the house could have gained access to the firearm that defendant had brought into the house, which would create a risk of danger to the police or others inside the dwelling. And given that defendant had entered the house before the officers and that the firearm constituted incriminating evidence, it was reasonable for the officers to ensure that the firearm had not been secreted or moved by defendant or someone else in the house before the officers arrived. Accordingly, the officers' actions in entering the house and seizing the firearm were justified by exigent circumstances.

*Lane*, 2018 WL 472215, at *3-4.

This decision was reasonable, and it shows that trial counsel's failure to present evidence at the suppression hearing that Petitioner had an expectation of

privacy in Smith's house did not result in *Strickland* prejudice. The Fourth

Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV.

"The chief evil that the Fourth Amendment protects against is the physical entry of

the home," and police are generally required to "obtain a warrant based upon a

judicial determination of probable cause prior to entering a home." *Johnson v. City

of Memphis*, 617 F.3d 864, 867-68 (6th Cir. 2010) (internal quotations omitted).

Warrantless searches are presumptively unreasonable under the Fourth Amendment.

*Payton v. New York*, 445 U.S. 573, 586 (1980). The presumption can be rebutted

only by a few specifically established and well-delineated exceptions. The

Government bears the burden of establishing the legitimacy of its warrantless search,

and that burden is a heavy one. *United States v. Akrawi*, 920 F.2d 418, 421 (6th Cir.

1990); *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984).

The exception to the warrant requirement relevant here is the existence of

exigent circumstances. "Exigent circumstances arise when an emergency situation

demands immediate police action that excuses the need for a warrant." *Johnson v.

City of Memphis*, 617 F.3d 864 (6th Cir. 2010). The Sixth Circuit has recognized

four situations that may rise to the level of exigency: "(1) hot pursuit of a fleeing

felon, (2) imminent destruction of evidence, (3) the need to prevent a suspect's

escape, and (4) a risk of danger to the police or others." *Thacker v. City of Columbus*,

328 F.3d 244, 253 (6th Cir. 2003) (internal quotations omitted).

In *United States v. Santana*, 427 U.S. 38, 40-43 (1976), the Supreme Court upheld a warrantless entry into a home where the defendant, a suspect in a drug transaction, had been standing in the doorway with a brown paper bag in her hand and then retreated into the vestibule as police officers pulled up to her house and shouted "police" while exiting their vehicle. The Court found that the officers' entry through the open door of the defendant's house constituted "hot pursuit," and thus was permitted in light of the officers "realistic expectation that any delay would result in destruction of evidence." 427 U.S. at 42-43. The Court reasoned that it would be anomalous to allow a suspect to evade a lawful public arrest simply by fleeing into a private residence. 427 U.S. at 42.

Here, Officer Zeolla, whose testimony the trial court accepted as true, (see ECF No. 8-3, PageID.135), testified that he and his partner responded in a marked patrol car to Murray Hill Street on a report of gunshots. (Id., PageID.100-04.) When he arrived at the location, he saw Lane walking down the street. (Id., PageID.104.) Zeolla did not see anyone else outside. (Id.) Zeolla then pointed a spot light on Lane, Lane grabbed his right side, and he ran into the residence at 15444 Murray Hill. (Id., PageID.105.) In Zeolla's experience, this was an indication that Lane might be armed with a handgun. (Id.) As Zeolla gave chase, before Lane entered the home, Zeolla "observed [Lane] remove the handgun from his right side." (Id., PageID.106.)

*Lane v. Horton*, No. 19-12689

The trial court reasonably found based on this evidence that exigent circumstances existed to justify the warrantless search of the residence. There had been a report of shots fired in the area. A police officer then saw Lane, the only person out on the street, grab his right-side waistband and run. The officer then saw Lane handle what he believed to be a handgun before he entered the residence. Based on these observations, it was reasonable for the officer to believe that he was pursuing a fleeing suspect who could pose a danger to the officer or to persons inside the house given the report of shots already having been fired. Accordingly, even if defense counsel had successfully established that Lane had an expectation of privacy in the residence, the motion to suppress would nevertheless have been denied on the alternative basis discussed by the Michigan Court of Appeals. Petitioner has therefore failed to demonstrate that he was denied the effective assistance of counsel.

B. Prosecutorial Misconduct

Lane next raises numerous claims of prosecutorial misconduct. After reciting the applicable standard, the Michigan Court of Appeals thoroughly addressed and rejected each of the allegations as follows:

> Defendant makes numerous assertions of prosecutorial misconduct. First, defendant contends that the prosecutor made improper remarks in closing argument challenging the credibility or believability of the only defense witness, Loretta Smith, who was defendant's girlfriend and who testified that she had bought the gun found in the house. The prosecutor noted Smith's testimony that "she bought the firearm off of some person on the street; that she doesn't know much about firearms, but she bought it, didn't know if it was

15

loaded, and she put it under a couch cushion in the same house where her two children are." The prosecutor then stated, "If you believe that, there's nothing I can do for you." The prosecutor discussed Smith's inability to recall certain details about the gun. The prosecutor stated, "Is that a person on the stand recalling from memory, or was that somebody sitting on the stand, trying to make up anything she could to save the person that she cares about? I commend her, but I submit to you that you should not believe a word that she says." Later, the prosecutor characterized Smith's testimony as "really far-fetched[,]" again noting that Smith claimed to have bought the gun "despite clearly knowing nothing about it, [and] claiming to put it under her couch cushion with children in the house[.]" Still later, the prosecutor said, "So, once again, I think you have no reason, at all, to believe a word that Ms. Smith said. It just was a lie that wasn't thought through ahead of time. And I think that was made very clear." During rebuttal closing argument, the prosecutor again discussed Smith's testimony about buying the gun, and stated, "Ladies and gentlemen, that's a lie. And you know it. You're smart people. You have reason and you have common sense. And I trust that you brought it with you."

"A prosecutor is afforded great latitude regarding his or her arguments and conduct at trial." *People v. Fyda*, 288 Mich. App. 446, 461 (2010). A prosecutor is "free to argue the evidence and all reasonable inferences from the evidence as they relate to [the prosecutor's] theory of the case." *People v. Seals*, 285 Mich. App. 1, 22 (2009) (citation omitted). The prosecutor may argue from the facts that defense witnesses are not worthy of belief. *People v. Dobek*, 274 Mich. App. 58, 67 (2007). The prosecutor "need not confine argument to the blandest possible terms." *Id*. at 66. Here, the prosecutor's arguments challenging the believability of Smith's testimony were not improper. The prosecutor argued from the facts that Smith's testimony was implausible. The prosecutor highlighted the fact that Smith claimed to have bought the gun and stuck it under her couch cushion even though Smith had children in her house. The prosecutor's suggestion that Smith's testimony should not be believed comprised a permissible argument.

But even if defendant could establish that the prosecutor's argument on this point was somehow improper, defendant fails to establish that any prejudice could not have been alleviated by a curative

instruction. "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements." *Seals*, 285 Mich. App. at 22 (citation omitted). Also, the trial court instructed the jury to decide the case only on the basis of the properly admitted evidence and that the attorneys' arguments and statements did not constitute evidence. "This instruction was sufficient to eliminate any prejudice that might have resulted from the prosecutor's remarks." *People v. Thomas*, 260 Mich. App. 450, 454 (2004) (citations omitted); see also *People v. Abraham*, 256 Mich. App. 265, 279 (2003) ("Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors.").

Defendant next challenges the following statement by the prosecutor in rebuttal closing argument regarding Harnphanich's response to a question by defense counsel: "And when Officer Harnphanich had trouble understanding her questions, he said: 'I'm trying to understand what you're asking me.' That's somebody who's telling the truth." This argument was in response to defense counsel's arguments that extensively challenged the credibility of Harnphanich, and particularly in response to the following argument by defense counsel:

> And then Officer Harnphanich, remember I was asking him questions? You all saw that. And you can test credibility by his body language, and how long—his long pauses, and: "I'm trying to think how to answer your question."
>
> No, no, no. You're tryin' to think, because that didn't happen, because you're trying to make something to fill in the gaps.

A prosecutor's remarks must be evaluated in context and in light of defense counsel's arguments. *Thomas*, 260 Mich. App. at 454. "[A] prosecutor may not vouch for the credibility of his witnesses by implying that he has some special knowledge of their truthfulness. But a prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *Id.* at 455 (citation omitted). Here, after defense counsel

challenged Harnphanich's credibility during closing argument, the prosecutor offered a responsive argument suggesting that Harnphanich was credible and that he was merely attempting to understand defense counsel's question. The prosecutor did not vouch for Harnphanich's credibility by suggesting some special knowledge concerning his truthfulness. The prosecutor merely argued from Harnphanich's trial testimony that he was credible, and this argument was in response to defense counsel's argument. Hence, the prosecutor's argument on this point was not improper. Further, any prejudicial effect of the prosecutor's argument "could have been alleviated by a curative instruction given on a timely objection[,]" *id.*, and the trial court's instructions to decide the case only on the basis of the properly admitted evidence and that the attorney's arguments and statements did not constitute evidence sufficed to eliminate any prejudice. *Id.* at 454.

Next, defendant contends that the prosecutor made a material misstatement in closing argument when he stated that Smith did not know what color the gun was or if it was big or small. In fact, defendant argues, Smith testified that the gun was black and that it was a relatively big pistol. "Although a prosecutor may not argue facts not in evidence or mischaracterize the evidence presented, the prosecutor may argue reasonable inferences from the evidence." *People v. Watson*, 245 Mich. App. 572, 588 (2001). In closing argument, the prosecutor stated:

[Smith] wasn't able to tell you—she was able to say: "The gun might be black." Didn't know if it was a revolver or automatic, didn't know if it had any bullets in it, didn't know if it was small or if it was big.

Smith testified about the gun as follows during the prosecutor's cross-examination:

Q. What kind of gun is it?
A. I don't know.

Q. You don't know.

A. No.

Q. Is it a pistol or a rifle?

A. It wasn't a rifle, 'cuz a rifle is way bigger than a pistol. So, what kinda' gun did I purchase? I don't know. All I asked for is, hey, a handgun.

Q. Do you recall what color it was?

A. It may be black. I'm not for sure.

Q. Are you sure it was black?

A. I said it may be.

Q. May be. Okay. Do you recall what the handle looked like?

A. Not right off-hand I can't.

Q. Now, okay. Does the gun fit in your pocket?

A. No, I don't think so. It wasn't small enough, like a two, two.

Q. So, it wasn't super small.

A. No, it was not.

Q. A bigger pistol.

A. Yeah.

Later, the following exchange occurred during the prosecutor's cross-examination of Smith:
Q. You bought a gun. You're not sure what it looks like, or how big it was, or if it had bullets in it, or what kind of bullets it would take, and you stuck it under the couch, in a house with two children in it?

THE COURT: Is that your testimony?

THE WITNESS: Yes, I bought a gun.

CROSS–EXAMINATION (CONTINUED)

BY MR. KONING [the prosecutor]:

Q. Do I have that right?

A. Yes.

Contrary to defendant's argument, the prosecutor did not mischaracterize Smith's testimony. The prosecutor correctly noted that Smith testified that the pistol might have been black. Regarding the size of the gun, the prosecutor stated that Smith did not know if the gun was small or big. Although Smith at one point indicated that the gun would not fit into her pocket, that it was not "super small[,]" and that it was "[a] bigger pistol[,]" she later expressed agreement with the prosecutor that Smith did not know how big the pistol was. The prosecutor's argument thus contained a reasonable inference from the evidence. In any event, any minimal prejudice was alleviated by the trial court's instructions to decide the case only on the basis of the properly admitted evidence and that the attorneys' arguments and statements did not constitute evidence. See *Thomas*, 260 Mich. App. at 454.

Defendant next takes issue with the prosecutor's suggestion in rebuttal closing argument that the jury could infer consciousness of guilt from defendant's flight. The prosecutor stated:

    And the Judge is going to give you an instruction that when some—on flight—that when somebody runs, you can, you, as the deciders of what is and what isn't fact, you can determine that that's evidence of knowledge that they're guilty of something.

Defendant asserts that this argument comprises a material misstatement and that "these are facts not stated in evidence." Defendant has abandoned this contention because he does not explain how the prosecutor's argument constitutes a material misstatement or how it asserts facts not in evidence. See *People v. Matuszak*, 263 Mich. App. 42, 59 (2004) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis

for his claims, nor may he give only cursory treatment of an issue with little or no citation of supporting authority. Such cursory treatment constitutes abandonment of the issue.") (quotation marks, brackets, and citations omitted). If defendant is suggesting that there is no evidence that he fled from the police, his argument lacks merit because there was indeed ample testimony that he fled from the police.

Defendant next argues that the prosecutor erred in reading from statutes during closing argument. Defendant claims that this impaired the trial court's function of instructing the jury. Defendant fails to provide any record citation in support of this assertion; that is, he does not cite any portion of the trial transcript in which the prosecutor read from statutes during closing argument. Nor does defendant present a meaningful appellate argument regarding this assertion. This aspect of the issue has thus been abandoned. See *People v. Bosca*, 310 Mich. App. 1, 48 (2015), app held in abeyance 872 N.W.2d 492 (Mich, 2015) ("Because defendant has failed to sufficiently develop this argument or to provide any record citation in support of his claim, we find that the issue has been abandoned on appeal."). In reviewing the record, we find no indication that the prosecutor read statutes to the jury, let alone that he inaccurately read any statutes to the jury. Presumably defendant may be referring to the fact that the prosecutor listed and discussed the elements of the charged offenses during closing argument, but defendant fails to identify any error by the prosecutor in doing so.

Defendant next contends that the prosecutor misstated the law in closing argument when explaining the concept of possession to the jury. Defendant purports to quote from the transcript, but his quotation is inaccurate. In particular, defendant's quotation suggests that the prosecutor stated that defendant could have jointly possessed the gun even if he did not know the gun was in the house, and that defendant being in the house was all that it took to prove that he was a felon in possession of a gun. We find no such statements by the prosecutor in the trial transcript. Defendant asserts without elaboration that the prosecutor made misstatements in defining the concept of possession, but it appears defendant's cursory argument is premised on his inaccurate quotation of the trial transcript. Defendant's argument has thus been abandoned as inadequately briefed. See *Bosca*, 310 Mich. App. at 48. Further, the trial court instructed the jury on the meaning of possession, and defendant does not contend that the trial court erred in

its instruction on possession. The trial court also instructed the jury: "It is my duty to instruct you on the law. You must take the law as I give it to you. If a lawyer says something different about the law, follow what I say." Again, jurors are presumed to follow their instructions, and the trial court's instructions therefore sufficed to cure any inadequacy in the prosecutor's explanation of the concept of possession. See *People v. Unger*, 278 Mich. App. 210, 235 (2008).

Next, defendant contends that the prosecutor improperly discredited the defense theory during the prosecutor's rebuttal closing argument. Defendant challenges the prosecutor's statement that defense counsel was "grabbing at straws for anything to try and find a reasonable doubt where there just isn't, because it's just really straightforward." The prosecutor's comment was not improper. Again, a prosecutor "need not confine argument to the blandest possible terms." *Dobek*, 274 Mich. App. at 66. A prosecutor's remarks must be evaluated in context and in light of defense counsel's arguments. *Thomas*, 260 Mich. App. at 454. During closing argument, defense counsel challenged the credibility of the officers in connection with their purported lack of consistency in estimating the size of the front window of Smith's house and in referring to the front window as a "large picture window." During rebuttal argument, the prosecutor stated that defense counsel was focusing on questions that did not matter such as whether the front window was called a picture window or merely a front window. The prosecutor then made the comment suggesting that the defense was "grabbing at straws" to "find a reasonable doubt[.]" Viewed in context, the prosecutor's comment was a permissible response to defense counsel's argument.

Defendant also challenges the prosecutor's statement that defense counsel was "trying to get at your heart and make you feel you're doing the right thing by giving a verdict of not guilty[ ]" and that the jurors had instead "swore an oath to take your heart out of it, and you use your mind, and let your mind look at what you saw and what you heard, and judge what's a fact, and determine if those facts match the elements of the crimes." The prosecutor's comment that defense counsel was attempting to get at the jurors' hearts and that the jurors were instead required to use their minds was a way of telling the jurors to determine the facts and then determine whether those facts satisfied the elements of the charged offenses. This appears to have been an

*Lane v. Horton*, No. 19-12689

effort to remind the jurors of their responsibility to decide the case on the basis of the facts, given that defense counsel's closing argument injected emotional appeals, including gratuitous references to defendant's age, race, and gender, as well as to the "national culture" of "[p]olice misconduct[,]" in lieu of confining her remarks to the facts of the case.1 Viewed in context, the prosecutor's remarks were not improper.

*Lane*, 2018 WL 472215, at *5-8.

This decision did not unreasonably apply clearly established Supreme Court law. "On habeas review, claims of prosecutorial misconduct are reviewed deferentially." *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003) (citing *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id*. (quoting *Darden*, 477 U.S. at 181 (additional citation omitted)). Therefore, a claim of prosecutorial misconduct provides a basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974). Moreover, to obtain federal habeas relief on a prosecutorial misconduct claim, the petitioner must show that the state court's rejection of the claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting *Harrington*, 562 U.S. at 103).

23

Here, the Michigan Court of Appeals accurately summarized the facts surrounding Lane's allegations of prosecutorial misconduct. It then reasonably applied the broad standard governing such claims to the facts of the case, and it reasonably concluded that the claims were without merit. For the reasons stated by the state court, the challenged arguments and remarks by the prosecutor did not deny Lane his right to a fundamentally fair trial because they were based on the evidence presented at trial and did not suggest to the jury an improper basis on which to determine Lane's guilt. This claim is without merit.

C. Sufficiency of the Evidence

Finally, Lane asserts that constitutionally insufficient evidence was presented at his trial to sustain his convictions. Again, after reciting the constitutional standard and the elements of the offenses of conviction, the Michigan Court of Appeals rejected the contention on the merits:

> The parties stipulated that defendant had previously been convicted of a felony and that he did not have a right to possess the firearm or the ammunition on the date of the offenses in this case because the requirements for regaining eligibility to possess a firearm or ammunition had not been satisfied. Police officers testified that they observed defendant remove a handgun from underneath his jacket or sweatshirt as he entered the house located at 15444 Murray Hill. After defendant entered the house, the officers saw through a front window that defendant bent down in an area of the house to the right side of the front door. After entering the house and detaining defendant, the police recovered a handgun that was protruding from underneath a cushion of a couch located in the area where the police had seen defendant bending down. The gun appeared similar in size and color to the gun that defendant had pulled from his waist when entering the house. The gun

was a .32 caliber blue steel revolver with two live rounds in it. Given the above evidence and the parties' stipulations, a rational trier of fact could have found that defendant was a felon who possessed a firearm and ammunition before his right to do so was formally restored. There was therefore sufficient evidence to support his convictions for felon in possession of a firearm and felon in possession of ammunition. The evidence also supports a conclusion that defendant possessed a firearm while committing the felony of felon in possession of a firearm. There was thus sufficient evidence to support his felony-firearm conviction.

Defendant makes a cursory assertion that the officers' testimony that they saw defendant remove the handgun before entering the house may not be considered because defendant was acquitted of the charged offense of carrying a concealed weapon, MICH. COMP. LAWS. § 750.227. Defendant does not cite any authority in support of this assertion or elaborate on why he thinks his acquittal of one offense precludes considering the officers' testimony when determining whether there was sufficient evidence to support his convictions for other offenses. Defendant has thus abandoned this argument. See *Matuszak*, 263 Mich. App. at 59 ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment of an issue with little or no citation of supporting authority. Such cursory treatment constitutes abandonment of the issue.") (quotation marks, brackets, and citations omitted).

Defendant also notes that the officers did not see the gun or defendant's arms or hands when they saw him through the front window bending down, that fingerprint testing of the gun was inconclusive, that Smith claimed the gun belonged to her, and that the gun was not recovered from defendant's person. None of these facts alters the conclusion that there was sufficient evidence to support defendant's convictions. The officers saw defendant remove a gun from underneath his jacket or sweatshirt as he entered the house; the fact that the gun and defendant's arms and hands were not visible through the front window when he leaned down does not alter the fact that the officers saw defendant holding the gun as he was entering the house. Moreover, the evidence supports a reasonable inference that defendant possessed the gun inside the house because the gun was found protruding from under a couch cushion in the area where defendant had

*Lane v. Horton*, No. 19-12689

been seen bending down. The inconclusive fingerprint testing likewise does not change the fact that the officers testified that they saw defendant holding the gun. Eyewitness testimony is sufficient evidence to support a conviction; corroborating physical evidence is not required. See *People v. Newby*, 66 Mich. App. 400, 405 (1976). Smith's testimony that the gun belonged to her again does not alter the fact that the officers testified to their observations of defendant holding the gun. "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *Kanaan*, 278 Mich. App. at 619. "All conflicts in the evidence must be resolved in favor of the prosecution." *Id*. The fact that the gun was not recovered from defendant's person is explained by the fact that defendant entered the house before the officers and was seen through the front window leaning down in the area of the couch from which the gun was later recovered.

*Lane*, 2018 WL 472215, at *10-11.

Under clearly established Supreme Court law the standard governing sufficiency of the evidence claims is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Under AEDPA, moreover, a habeas court's "review of a state-court conviction for sufficiency of the evidence is very limited," *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018), because *Jackson* claims are "subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651, 132 S. Ct. 2060, 182 L. Ed. 2d 978 (2012) (per curiam). First, it is the responsibility of the jury to decide what conclusions should be drawn from the evidence admitted at trial. *Johnson*, 566 U.S. at 651 (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per

*Lane v. Horton*, No. 19-12689

curiam)). "And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id*. (quoting *Smith*, 565 U.S. at 2); see also *Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017) (stating that "two layers of deference apply [to a sufficiency-of-the-evidence claim], one to the jury verdict, and one to the state appellate court").

Lane makes two arguments challenging the sufficiency of the evidence. He first asserts that the jury's decision to find him not guilty of carrying a concealed weapon must mean that they found that he never possessed the firearm. He second notes that the officers never definitively stated that they saw him in possession of the firearm, and that Officer Zeolla's testimony as to what he saw Lane handle as he entered Smith's house was to equivocal to sustain his convictions.

As for the first contention, the Supreme Court has stated that "inconsistent verdicts are constitutionally tolerable." *Dowling v. United States*, 493 U.S. 342, 353-54 (1990). "Inconsistency in a verdict is not a sufficient reason for setting it aside." *Harris v. Rivera*, 454 U.S. 339, 345 (1981). The fact that the jury acquitted Lane of carrying a concealed weapon has no bearing on the sufficiency of the evidence as to the other charges.

With respect to the second point, the argument boils down to an assertion that there was no direct evidence that the firearm found in Smith's house belonged or was possessed by Lane. First, the premise is not true. The evidence indicated that the officer saw Lane reach to his side, and that he then saw Lane handle what appeared to be a handgun as Lane entered the house. In any event, when considering a challenge to the sufficiency of the evidence to convict, the reviewing court must give circumstantial evidence the same weight as direct evidence. See *United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006) (internal quotation omitted). The evidence presented at Lane's trial was sufficient to sustain his convictions.

As all of Lane's claims are without merit, the petition will be denied.

### III. Certificate of Appealability

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(2). The applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the

*Lane v. Horton*, No. 19-12689

court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). Here, jurists of reason would not debate the Court's conclusion that Petitioner has failed to demonstrate entitlement to relief because his claims are completely without merit. Therefore, a certificate of appealability is denied.

### IV. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, and 2) **DENIES** a certificate of appealability.

**SO ORDERED.**

_s/Arthur J. Tarnow_____
Arthur J. Tarnow
United States District Judge

Dated: February 8, 2021